**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **RICHARD D. GENTILE, M.D.,** ) | **CASE NO. 4:05 CV 2936** |
| ) | |
| **Plaintiff,** ) | |
| ) | **JUDGE PETER C. ECONOMUS** |
| **v.** ) | |
| ) | |
| **FIFTH AVENUE** ) | |
| **OTOLARYNGOLOGY, INC. et al.,** ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| **Defendants.** ) | |

This matter is before the Court upon Defendants Maureen Mahar-Matthews, M.D., Catholic Healthcare Partners, Humility of Mary Health Partners, and St. Elizabeth Health Center's Motion to Dismiss (Dkt. #21) and Defendants Fifth Avenue Otolaryngology, Inc., Richard Pearlstein, M.D., John Babyak, M.D., Arthur Wood, M.D., and Gene Potesta, M.D.'s Motion for Judgment on the Pleadings (Dkt. #25).

**I. BACKGROUND**

The Complaint asserts the following factual allegations. (Dkt. #1, Complaint). Plaintiff, Richard D. Gentile ("Dr. Gentile") is a physician who formerly held staff

privileges at Defendant St. Elizabeth Health Center ("St. Elizabeth Hospital").[1] (Id.). While at St. Elizabeth Hospital, Dr. Gentile and Defendants, Doctors Richard Pearlstein ("Pearlstein"), John Babyak ("Babyak"), Arthur Wood ("Wood"), and Gene Potesta ("Potesta") comprised the Otolaryngology section of the Department of Surgical Specialties (the "Otolaryngology Section"). (Complaint ¶ 8). Doctors Pearlstein, Babyak, Wood and Potesta are the sole shareholders of Defendant Fifth Avenue Otolaryngology, Inc.[2] (Id. ¶ 2).

Wood served as the Director of the Otolaryngology Section and was responsible for establishing an on-call schedule for members of the Otolaryngology Section. (Id. ¶ 10). This schedule applied to Dr. Gentile, and he was periodically responsible for on-call coverage of the emergency room. (Id. ¶ 11). In September 2005, Dr. Gentile was scheduled for on-call coverage of the emergency room. (Id.). These scheduled on-call dates, however, conflicted with Dr. Gentile's attendance at an annual meeting of the American Academy of Facial Plastic and Reconstructive Surgery. (Id.). Defendants[3] refused to adjust the on-call schedule so that Dr. Gentile could attend the meeting and threatened disciplinary action against his staff privileges if he did not maintain his on-call

---

[1] In addition to St. Elizabeth Hospital, the Complaint names, *inter alia*, the department chair at St. Elizabeth Hospital, Maureen Mahar-Matthews, M.D., and the healthcare system operating St. Elizabeth Hospital, Humility of Mary Health Partners and Catholic Healthcare Partners (collectively, the "St. Elizabeth Defendants") as defendants.

[2] The Court shall refer to defendants Pearlstein, Babyak, Wood, Potesta, and Fifth Avenue Otolaryngology Inc. collectively as the "Fifth Avenue Defendants."

[3] The term "Defendants," as used in this memorandum opinion, refers to all defendants—the St. Elizabeth Defendants and the Fifth Avenue Defendants collectively.

coverage. (Complaint ¶ 12). Dr. Gentile, consequently, resigned his staff privileges at the hospital so that he could attend the meeting without facing disciplinary actions from the hospital. (Id. ¶ 13). A consequence of Dr. Gentile's resignation was the termination of several contracts between Dr. Gentile and third parties. (Id. ¶ 24). St. Elizabeth Hospital also terminated its facial trauma contract with him, and Dr. Gentile lost the ability to treat patients whose health insurance plans required them to use the St. Elizabeth Defendants' facilities. (Id. ¶¶ 26–27).

On December 21, 2005, Dr. Gentile filed a Complaint in this Court alleging the following: violations of Sections 1 and 2 of the Sherman Antitrust Act against all Defendants; a claim for tortious interference with contractual relations against the St. Elizabeth Defendants; and a claim for defamation against the Fifth Avenue Defendants. On February 3, 2006, the Fifth Avenue Defendants filed an Answer to the Complaint and attached a complete reproduction of the alleged defamatory statement. (Dkt. #20). The St. Elizabeth Defendants did not file an Answer; instead, they filed a Motion to Dismiss the Complaint in its entirety. (Dkt. #21). Subsequently, on February 6, 2006, the Fifth Avenue Defendants filed a Motion for Judgment on the Pleadings. (Dkt. #25). The Court, then, postponed scheduling a Case Management Conference until resolution of these pending motions. (Dkt. #26).

Pursuant to Local Rule 7.1 of this Court, Dr. Gentile had thirty days in which to respond to the pending motions. Dr. Gentile requested and received two extensions of time to respond to Defendants' motions, giving Dr. Gentile until April 1, 2006 in which to

respond to the motions. (Dkt. #27; Dkt. #29). On March 31, 2006, Dr. Gentile, instead of submitting a response, moved to voluntarily dismiss the Complaint without prejudice. (Dkt. #30). Both the Fifth Avenue Defendants and St. Elizabeth Defendants opposed the motion. (Dkt. #31; Dkt. #32). The Court denied the motion for voluntary dismissal without prejudice and ordered Dr. Gentile to file a Response to Defendants' pending motions no later than May 17, 2006. (Dkt. #33). On May 16, 2006 Dr. Gentile, instead of filing a Response, renewed his Motion for Voluntary Dismissal Without Prejudice. (Dkt. #34). The Court denied the motion.

Dr. Gentile, despite being granted ample opportunity to do so, has failed to respond to either of Defendants' pending motions. This Court may rule on unopposed motions without hearing at any time after the time for filing an opposition has expired. See LOCAL RULE 7.1(g); Guarino v. Brookfield Twonship Trustees, 980 F.2d 399, 405 (6th Cir. 1992). The Court shall "carefully review the legitimacy" of the Fifth Avenue Defendants' and St. Elizabeth Defendants' unresponded-to motions, "even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party." Guarino, 980 F.3d at 407. In addition to arguments endorsed by the moving party, the Court shall consider inferences that are apparent from the designated evidence and favorable to the nonmoving party. See id. Thus, if Defendants meet their burden in moving for dismissal on the unopposed issues, then dismissal would be proper. See Cacevic v. City of Hazel Park, 226 F.3d 483, 492 (6th Cir. 2000); Carver v. Bunch, 946 F.2d 451, 454–55 (6th Cir. 1991).

**II. STANDARD OF REVIEW**

The instant motions before the Court are the St. Elizabeth Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the Fifth Avenue Defendants' motion for judgment on the pleadings pursuant to Rule 12(c). Both motions raise the same defense of failure to state a claim upon which relief may be granted.

> The only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss. A motion to dismiss under Rule 12(b)(6) requires the moving party to request judgment in a pre-answer motion or in an answer. A motion for judgment on the pleadings under Rule 12(c) may be submitted after the defendants filed an answer.

Hunter v. Ohio Veterans Home, 272 F.Supp. 2d 692, 694 (N.D. Ohio 2003). When a Rule 12(b)(6) defense of failure to state a claim upon which relief may be granted is raised by a Rule 12(c) motion for judgment on the pleadings, courts apply the standard for a Rule 12(b)(6) motion. See Livingston v. Luken, 151 Fed. Appx. 470, 474 (6th Cir. 2005) (citing Morgan v. Church's Fried Chicken, 829 F.2d 10, 11 (6th Cir.1987)). Accordingly, both motions before the Court require application of the standard for Rule 12(b)(6) motions. Id.

A 12(b)(6) motion tests whether a plaintiff has plead a cognizable claim. See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988). Essentially, it allows the court to dismiss meritless cases and claims which would otherwise waste judicial resources and result in unnecessary discovery. See e .g., Nietzke v. Williams, 490 U.S. 319, 326–27 (1989). A court, however, is to presume that well plead allegations are true, resolve all doubts and inferences in favor of the pleader, and view the pleading in the light most favorable to the non-moving party. See Cent. States, Southeast & Southwest

Areas Pension Fund v. Mahoning Nat'l Bank, 112 F.3d 252 (6th Cir. 1997). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Neitzke, 490 U.S. at 326–27; Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1997); Ang v. Proctor & Gamble Co., 932 F.2d 540, 544 (6th Cir. 1991). Therefore, the standard applied in evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. See Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).

Before deciding to grant a motion to dismiss, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47; see Westlake, 537 F.2d at 858. The plaintiff must allege the essential material facts of the case. See Scheid, 859 F.2d at 436–37. Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. See Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039–40 (6th Cir. 1991). In considering a 12(b)(6) motion, however, the court must not accept plaintiff's legal conclusions or unwarranted factual inferences as true. See Lewis, 135 F.3d at 405–06; see also Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

Moreover, in antitrust actions, the essential elements of a private antitrust claim must

be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion. See Foundation for Interior Design Educ. Research v. Savannah College of Art & Design, 244 F.3d 521, 530 (6th Cir. 2001) (citing Crane & Shovel Sales Corp. v. Bucyrus-Erie Co., 854 F.2d 802, 805 (6th Cir.1988)). While the pleading standard under the federal rules is very liberal, see FED. R. CIV. P. 8, "the price of entry, even to discovery, [in an antitrust action] is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome." Id. (internal citations omitted).

### III. LAW AND ANALYSIS

#### A. Antitrust Claims

Sections 1 and 2 of the Sherman Act state, in part:

> Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.

15 U.S.C. § 1,

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony….

15 U.S.C. § 2. Private persons are given a cause of action under the Sherman Act by Section 4 of the Clayton Act, which provides for a suit to recover treble damages by any person injured in his business or property by the violation of the antitrust laws. See 15 U.S.C. § 15.

7

### 1. Antitrust Standing and Antitrust Injury

Before examining whether Dr. Gentile's Complaint asserts the elements of a Section 1 or Section 2 Sherman Act claim, the Court shall first examine the threshold requirement of standing.  See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 484–89 (1977); HyPoint Tech., Inc. v. Hewlett-Packard Co., 949 F.2d 874, 877 (6th Cir. 1991). Accord; Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328 (1990); Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519 (1983); Blue Shield v. McCready, 457 U.S. 465 (1982).

> Antitrust standing to sue is at the center of all antitrust law and policy. It is not a mere technicality. It is the glue that cements each suit with the purposes of the antitrust laws, and prevents abuses of those laws. The requirement of antitrust standing ensures that antitrust litigants use the laws to prevent anticompetitive action and makes certain that they will not be able to recover under the antitrust laws when the action challenged would tend to promote competition in the economic sense. Antitrust laws reflect considered policies regulating economic matters. The antitrust standing requirement makes certain that the laws are used only to deal with the economic problems whose solutions these policies were intended to effect.

HyPoint, 949 F.2d at 877.

Standing to bring an action under the Sherman Act is conferred by Section 4 of the Clayton Act, which provides, in pertinent part:

> …any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor…, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15; see Brunswick, 429 U.S. at 489.  To establish standing a plaintiff must present a proper claim for antitrust injury as well as demonstrate that plaintiff is the proper

8

party to bring the antitrust suit. See Re/Max Int'l v. Realty One, 900 F.Supp. 132, 145 (N.D. Ohio 1995); see also Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 110 n. 5 (1986) ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing under Section 4 [of the Clayton Act]."). "Where the parties challenge standing at the pleading stage, the court 'must examine the allegations contained in the complaint' to determine first whether the plaintiff has presented a proper claim for antitrust injury before asking whether the plaintiff is the proper party to bring suit." Realty One, 900 F.Supp. at 145 (citing Todorov v. DCH Healthcare Auth., 921 F.2d 1438, 1448–49 (11th Cir.1991)). Courts should not confuse antitrust injury with antitrust standing because although the two concepts share a common ingredient, an inquiry into antitrust injury "is more limited than one to determine whether the plaintiff has standing." Axis, S.p.A. v. Micafil, Inc., 870 F.2d 1105, 1110–11 (6th Cir. 1989).

The Court, therefore, shall first address whether the Complaint alleges an antitrust injury. In Brunswick, the Supreme Court held that standing under the Clayton act requires more than mere injury proximately caused by a violation of the antitrust laws. 429 U.S. at 489. Instead,

> Plaintiffs must prove *antitrust injury*, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. *The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation*.

Id. (emphasis added). An "injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an

anticompetitive aspect of the practice under scrutiny…." Atlantic Richfield, 495 U.S. 328 at 334.  The antitrust injury requirement "ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief." Id. at 342.  In short, a private plaintiff can recover on an antitrust claim only for a loss which "stems from a competition-reducing aspect or effect of the defendant's behavior." Id. at 344.  "Individual injury, without accompanying market-wide injury, does not fall within the protections of the Sherman Act." Care Heating & Cooling, Inc. v. American Standard, Inc., 427 F.3d 1008, 1014 (6th Cir. 2005); see HyPoint, 949 F.2d at 878; Tennessean Truckstop, Inc. v. NTS, Inc., 875 F.2d 86, 88 (6th Cir. 1989); see also Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 641 (3d Cir. 1996) ("An antitrust plaintiff must prove that challenged conduct affected the prices, quantity or quality of goods or services, not just his own welfare.").

>The Complaint attempts to allege an antitrust injury at paragraph 16.
>
>Gentile has standing to pursue this anti-trust claim because there is a direct causal action between the illegal conduct of the Defendants and the harm caused to Plaintiff, and further, because the injuries to Plaintiff's medical practice are the type of injuries sought to be redressed by the Sherman Act.

(Complaint ¶ 16).  This statement, however, fails to assert a market-wide injury or specify any competition reducing effect of Defendants' behavior and merely restates antitrust law. See Brunswick, 429 at 489; Care Heating & Cooling, 427 F.3d at 1014.  At best, it is a conclusory assertion that the Sherman Act applies.  As the Court emphasized *supra*, the

essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion. See Foundation for Interior Design, 244 F.3d at 530; accord Mezibov, 411 F.3d at 716.

Other factual allegations in the Complaint also fail to allege an antitrust injury. The factual allegations of competition reducing behavior in the Complaint are directed at alleged harm suffered by Dr. Gentile personally and not at any anticompetitive effect or anticompetitive acts made possible by Defendants' actions. See Brunswick, 429 U.S. at 488. For example, the Complaint states Dr. Gentile "is the only board certified facial plastic surgeon in the immediate market area[4] of [St. Elizabeth Hospital]," but then elaborates that "the Defendants actions *towards him* were designed to eliminate competition since [Dr.] Gentile is the only member of the medical staff who is not an owner of [Fifth Avenue Otolaryngology, Inc.]." (Complaint ¶ 15) (emphasis added). Other harm alleged in the Complaint is also personal: Defendants conspired "to damage Gentile's medical practice," (Complaint ¶ 11); Defendants' actions "forced Gentile to resign his medical staff privileges," (Complaint ¶¶ 13, 20). The Complaint only describes the effect that the Defendants' actions had on Dr. Gentile. The loss of staff privileges "does not harm the consumer of medical services, but simply constitutes a personal harm to the individual physician." Sokol v. Akron Gen. Hosp., 5:95CV1108, 1997 U.S. Dist. LEXIS 22078, *32 n. 4 (N.D. Ohio Sep. 30, 1997), *rev'd on other grounds*, 173 F.3d 1026 (6th Cir. 1999); see

---

[4]The Complaint fails to specify what the immediate market area encompasses.

Austin v. McNamara, 979 F.2d 728 (9th Cir. 1992) (injury to a single physician-competitor in a single hospital, rather than injury to market competition, does not establish an antitrust injury).

Even where the Complaint alleges Defendants monopolized the provision of otolaryngology services at St. Elizabeth Hospital—implying harm to the hospital's otolaryngology patients—it nonetheless, fails to address the anticompetitive effect of Defendants' acts or any anticompetitive acts made possible by Defendants' actions. See Brunswick, 429 U.S. at 489. The Complaint merely asserts the existence of a monopoly and fails to describe the effect of the alleged monopoly on an identified relevant product or geographic market or on other competing otolaryngology specialists—it fails to describe the market injury. See Jefferson Parish, 466 U.S. at 31.

For example, the Complaint fails to allege that other otolaryngology doctors have been excluded form the marketplace; that patients are unable to find alternatives to the Defendants for their otolaryngological needs; or that Dr. Gentile himself is incapable of competing in the relevant market. See e.g., Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 31 (1984), *abrogated on other grounds by* Illinois Tool Works, Inc. v. Independent Ink, Inc., 126 S.Ct. 1281 (2006); Leak v. Grant Medical Center, 893 F.Supp. 757, 763–64 (S.D. Ohio 1995). In absence of a "showing that the market as a whole has been affected," the mere fact that one disappointed competitor must practice elsewhere does not constitute an antitrust injury. See Jefferson Parish, 466 U.S. at 31. Antitrust plaintiffs do not suffer antitrust injury merely because they are in a worse position than they would have been had

12

the challenged conduct not occurred. See Brunswick, 429 U.S. at 486–87. The Court, therefore, concludes that the Complaint fails to assert an anticompetitive act or effect on any identified market; consequently, the Complaint fails to state an antitrust injury regarding Dr. Gentile's Sherman Act claims. See Brunswick, 429 U.S. at 489. Because the Complaint fails to allege an antitrust injury, it also fails to allege standing to bring an antitrust claim. See id.

### 2. Sufficiency of Alleged Antitrust Claims

Beyond failure to allege antitrust injury and standing to bring an antitrust claim, the Complaint also fails to sufficiently allege essential elements of an antitrust claim.

### a. Relevant Market

In order to state a claim under the antitrust statues, a plaintiff must first define the relevant market: Section 1 of the Sherman Act, Stratmore v. Goodbody, 866 F.2d 189, 194 (6th Cir. 1989) ("The starting point in a [Section 1] case is to identify the relevant product and geographic markets."); Section 2 of the Sherman Act, Conwood Co., L.P. v. U.S. Tobacco Co., 290 F.3d 768, 782 (6th Cir. 2002) ("The first step in any action brought under § 2 of the Sherman Act is for the plaintiff to define the relevant product and geographic markets in which it competes with the alleged monopolizer."). Determining the relevant market enables the court to assess whether the defendant has monopoly power in that market, what the area of competition is, and whether the allegedly unlawful acts have anticompetitive effects in that market. See Brown Shoe Co. v. United States, 370 U.S. 294, 324 (1962); see also United States v. Grinnell Corp., 384 U.S. 563, 571 (1966); United

13

States v. E.I. du Pont de Nemours & Co., 353 U.S. 586, 593 (1957).

The relevant market analysis includes both a product market and a geographic market. See Brown Shoe, 370 U.S. at 324. The product market is defined as products or services which are reasonably interchangeable by customers for the same purpose, and the geographic market consists of the area of effective competition. See United States v. E.I. du Pont Nemours & Co., 351 U.S. 377 (1956); Tampa Electric Co. v. Nashville Coal Co., 365 U.S. 320 (1961); White & White, Inc. v. American Hospital Supply Corp., 723 F.2d 495, 500–01 (6th Cir. 1983). The geographic market is defined as an area of effective competition; it is not defined by "metes and bounds," but instead is determined by the area in which consumers can turn for alternative sources of supply. See White & White, 723 F.2d at 503. Failure to define a discrete relevant product and geographic market subjects a Section 2 claim to dismissal for failure to state a claim. See Cupp v. Alberto-Culver USA, Inc., 310 F.Supp.2d 963 (W.D. Tenn. 2004).

The Complaint seemingly defines the relevant product market as "the provision of otolaryngology services at [St. Elizabeth Hospital]." (Complaint ¶ 20). The Complaint, however, fails to mention, let alone define, the relevant geographic market. Even assuming the Complaint intended to identify the relevant geographic market as St. Elizabeth's, Dr. Gentile's antitrust claims still fail as a matter of law, because limiting the relevant market to a single hospital is too narrow a definition. See Brader v. Allegheny Gen. Hosp., 64 F.3d 869, 878 (3rd Cir. 1995) ("Every court that has addressed this issue has held or suggested that, absent an allegation that the hospital is the only one serving a particular area or offers

14

a unique set of services, a physician may not limit the relevant geographic market to a single hospital."). Consequently, in addition to failing to assert an antitrust injury, the Complaint also fails to allege an essential element of both Section 1 and Section 2 Sherman Act claims: definition of a relevant market.

### b. Conspiracy

The Complaint fails to allege another element specific to Section 1 Sherman Act claims: allegation of an antitrust conspiracy. To adequately prove an antitrust conspiracy claim under Section 1 a plaintiff "must establish that the defendants combined or conspired with an intent to unreasonably restrain trade." Nurse Midwifery Associates v. Hibbett, 918 F.2d 605, 611 (6th Cir. 1999). To adequately set forth a conspiracy, a plaintiff must show evidence "that reasonably tends to prove…a conscious commitment to a common scheme designed to achieve an unlawful objective." Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 764 (1984). It is crucial that a plaintiff demonstrate that there has been a contract, combination, or conspiracy between separate entities, because Section 1 does not reach unilateral conduct even if such conduct unreasonably restrains trade. See Copperweld v. Independence Tube Corp., 467 U.S. 752, 767–68 (1984). Under Section 1, only after the court has found that there was a conspiracy will it examine whether the conduct was unreasonable. See Nurse Midwifery, 918 F.2d at 612.

Not every agreement or coordinated conduct between two or more entities constitutes a conspiracy under Section 1. Under the intracorporate conspiracy doctrine officers and staff of a single business entity are not separate economic actors and are,

15

therefore, incapable of conspiracy under Section 1 of the Sherman Act. See Copperweld, 467 U.S. at 752. This doctrine extends to preclude findings of conspiracy between parent and subsidiary enterprises, see id., between a corporation and its employees and agents, see Smith v. Northern Mich. Hospitals, 703 F.2d 942, 950 (6th Cir. 1983), and within the Sixth Circuit, between a hospital and its medical staff, see Nurse Midwifery, 918 F.2d at 611 (1999). In Nurse Midwifery, the plaintiffs claimed that the defendants sought to protect their obstetrics practices by conspiring with area hospitals to deny nurse midwives hospital privileges. 918 F.2d at 607–08. The Sixth Circuit held that Section 1 of the Sherman Act is concerned only with concerted action among competitors and not the coordinated activities that occur within a single firm. Id. at 614. The Sixth Circuit found that the medical staffs were acting as officers of the hospitals when making staff privilege decisions, and therefore, the intracorporate conspiracy doctrine precluded a finding of a conspiracy between the hospitals and their medical staff. Id. at 614.

Similarly, in the instant case, the Complaint alleges the Fifth Avenue Defendants conspired with St. Elizabeth Hospital by refusing to cover Dr. Gentile's emergency call schedule, resulting in the forced resignation of Dr. Gentile's medical staff privileges at the hospital. Well established Sixth Circuit case law holds that a hospital and its medical staff cannot combine together for purposes of antitrust violation. See Nurse Midwifery, 918 F.2d at 607–14; see also Alba v. Marietta Memorial Hospital, 202 F.3d 267 (6th Cir. 2000) (unpublished table decision). Consequently, the Complaint fails to allege the conspiracy element of a Section 1 Sherman Act claim.

16

As discussed *supra*, the essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal for failure to state a claim. See Foundation for Interior Design, 244 F.3d at 530. The instant Complaint states a conclusory allegation of antitrust standing and fails to allege facts demonstrating the initial component of standing—antitrust injury. See Brunswick, 429 U.S. at 489. Moreover, the compliant fails to allege an essential element of both Section 1 and Section 2 antitrust claims: definition of a relevant market. See Cupp, 310 F.Supp. at 963. Finally, the Complaint fails to allege another essential element of a Section 1 claim: antitrust conspiracy. See nurse Midwifery, 918 F.2d at 611. For all these reasons, the Court finds Dr. Gentile's Complaint fails to state a claim for relief under either Section 1 or Section 2 of the Sherman Act. Consequently these claims are dismissed.

### B. State Law Claims

The remaining claims in the Complaint assert violations of Ohio law. As the Court has dismissed all federal claims alleged against Defendants, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims asserted in the Complaint. See 28 U.S.C. § 1367(c)(3); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Taylor v. First of America Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992). Accordingly, Plaintiffs remaining state law claims are also dismissed.

## IV. CONCLUSION

For the foregoing reasons, the St. Elizabeth Defendants' Motion to Dismiss (Dkt. #21) and the Fifth Avenue Defendants' Motion for Judgment on the Pleadings (Dkt. #25)

are **GRANTED** and the above-noted matter is hereby **DISMISSED**.

    **IT IS SO ORDERED.**

                                       /s/ *Peter C. Economus* — **08/28/06**
                                       **PETER C. ECONOMUS**
                                       **UNITED STATES DISTRICT JUDGE**